IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PAMELA SHORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-cv-00301-DGK |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This suit concerns the underinsured coverage provisions of three insurance policies issued to Plaintiff Pamela Shore ("Plaintiff") by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). On December 7, 2011, Plaintiff was involved in a car accident (the "Accident") while driving one of her family's three cars, a 1994 Pontiac Grand Am (the "Grand Am"). Plaintiff has recovered $250,000 from the other driver's insurance company, and now demands payment from her insurance provider, State Farm, pursuant to the underinsured motorist ("UIM") coverage included in two of her three car insurance policies. State Farm denied Plaintiff's claim, stating that the policy covering the Grand Am did not include underinsured motorist coverage, and that the policies on her other cars do not provide coverage. Plaintiff then filed this action, asserting claims for breach of contract and vexatious refusal to pay.

Now before the Court is State Farm's Motion for Summary Judgment (Doc. 31). The Court finds the policies are unambiguous and exclude coverage. The motion is GRANTED.

**Background**

For purposes of deciding this motion, the Court finds the relevant facts to be as follows.

Plaintiff and her husband have three separate car insurance policies with State Farm: one for the Grand Am involved in the Accident ("Grand Am Policy"),[1] one for a 1990 Ford F250 ("Ford Policy"),[2] and another for a 1997 Chevrolet Blazer ("Chevrolet Policy").[3] The Ford and Chevrolet polices expressly include UIM coverage; the Grand Am Policy does not.

On December 7, 2011, Plaintiff was involved in the Accident while driving her 1994 Pontiac Grand Am. She alleges her medical bills exceed $268,000 and her economic losses exceed $946,000. Plaintiff recovered $250,000 from the insurance company of the other driver involved in the Accident, Jessica Cannon. She demanded State Farm cover the balance of her losses, and State Farm denied her claim on the ground that the Grand Am insurance policy did not contain UIM coverage.

The Ford and Chevrolet policies contain the following language regarding UIM coverage:

> ***We*** will pay compensatory damages for ***bodily injury*** an ***insured*** is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***. The bodily injury must be:
> 1. sustained by an ***insured***; and
> 2. caused by an accident that involves the operation, maintenance, or use of an ***underinsured motor vehicle*** as a motor vehicle.
>
> ***We*** will pay only if the full amount of all available limits of all bodily injury liability bonds, and self-insurance plans that apply to the ***insured's bodily injury*** have been used up by payment of judgments or settlements, or have been offered to the ***insured*** in writing.

Def.'s Ex. C at 24-26 (Doc. 32-3); Def.'s Ex. D at 23-25 (Doc. 32-4) (emphasis in original).

The policies also contain a provision excluding coverage for injuries suffered while occupying a vehicle owned by the insured (the "Owned-Car Exclusion").[4] But, the policies also

---

1 Def.'s Ex. B (Doc. 32-2).

2 Def.'s Ex. C (Doc. 32-3).

3 Def.'s Ex. D (Doc. 32-4).

4 THERE IS NO COVERAGE:

. . .

2

Case 4:16-cv-00301-DGK   Document 45   Filed 02/27/17   Page 2 of 8

contain an exception (the "Insured-Spouse Exception")[5] to the Owned-Vehicle Exclusion for the individual named on the policy and his or her spouse. The Owned-Vehicle Exclusion and the Insured-Spouse Exception are the focus of this dispute.[6]

### Standard

A moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a jury question presents on an element, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541–42 (8th Cir. 2014).

### Discussion

State Farm asserts summary judgment is proper because the Grand Am policy did not

---

1. FOR AN ***INSURED*** WHO SUSTAINS **BODILY INJURY**:
   a. WHILE ***OCCUPYING*** A MOTOR VEHICLE ***OWNED BY YOU*** OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***; OR
   b. THROUGH BEING STRUCK BY A MOTOR VEHICLE ***OWNED BY*** ANY ***RESIDENT RELATIVE***.

Def.'s Ex. C at 26 (Doc. 32-3); Def.'s Ex. D at 25 (Doc. 32-4) (emphasis in original).

5 "This exclusion does not apply to the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while ***occupying*** or through being struck by a motor vehicle not ***owned by*** one or both of them; . . . ." *Id.* (emphasis in original).

6 The policies also contain several definitions pertinent to this dispute. Specifically, a "newly acquired car" ceases to be "newly acquired" at the "end of the 30th calendar day immediately following the date the car is delivered to ***you***." Def.'s Ex. B at 8; Def.'s Ex. C at 14; Def.'s Ex. D at 12. As of the date of the Accident, Plaintiff and her husband, Darryl A. Shore, had insured the Grand Am with State Farm since at least September 16, 2010, and it did not qualify as a "newly acquired" car. "***Your Car***' means the vehicle shown under 'YOUR CAR' on the Declarations Page" of the policy. Def.'s Ex. C at 14; Def.'s Ex. D at 13. The Ford and Chevrolet policies list a 1990 Ford F250 and a 1997 Chevrolet Blazer on each respective Declaration Page under "YOUR CAR." No vehicle listed on one policy is listed on the Declaration Page of another policy.

3

contain UIM coverage, and the UIM clauses in the Ford and Chevrolet policies cannot be "stacked"[7] to cover Plaintiff's injuries sustained in the Accident. Plaintiff contends that she should be covered by the UIM policies in the Ford and Chevrolet policies because UIM coverage follows the individual, not the vehicle, and the exclusions found in the Ford and Chevrolet policies do not apply.[8]

The interpretation of an insurance policy is a question of law, and "[t]he general rules for interpretation of contracts apply to insurance policies." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 860 (E.D. Mo. 2015) (applying Missouri law); *see also McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999). "Because Missouri does not require underinsured motorist coverage, the existence of the coverage and its ability to be stacked are determined by the insurance contract." *Lang v. Farmers Ins. Co., Inc.*, No. 4:14-cv-00501-HFS, 2015 WL 12731922, at *3 (W.D. Mo. June 1, 2015) (citing *Staufenbiel v. Amica Mut. Ins. Co.*, No. 4:13-CV-2571-JAR, 2015 WL 1456987 (E.D. Mo. Mar. 30, 2015)). "When 'construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . .'" *Morton*, 140 F. Supp. 3d at 860 (quoting *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009)). A court "should not interpret policy provisions in isolation but rather evaluate policies as a whole," and "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Id.* at 860-61 (internal

---

[7] "Stacking refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009) (quoting *Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo. App. 1999)).

[8] Plaintiff also asserts that State Farm procedurally waived its argument by failing to reference it in its denial of coverage letter to Plaintiff. The Court previously found that this argument was without merit in its Order Granting Defendant's Second Motion for Leave to Amend Answer (Doc. 39), and will not address the argument again now.

4

quotations omitted).

"[A] policy may clearly and explicitly spell out an intention to limit liability to a single coverage and thus foreclose stacking of medical payments coverage." *Buettner v. State Farm Auto. Ins. Co.*, 210 S.W.3d 363, 366 (Mo. App. 2006). But, if the "policy language is ambiguous [as to stacking], it must be construed against the insurer, and stacking will be allowed." *Id.* (alteration in original) (internal quotations omitted). "[A]mbiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007).

**I. The Owned-Car Exclusion is unambiguous and bars underinsured motorist coverage.**

The Ford and Chevrolet policies contain an Owned-Car Exclusion that Plaintiff contends is ambiguous and should be construed in her favor. They state:

THERE IS NO COVERAGE:

. . .
1. FOR AN *INSURED* WHO SUSTAINS **BODILY INJURY**:
    a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; OR
    b. THROUGH BEING STRUCK BY A MOTOR VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*.

Def.'s Ex. C at 26 (Doc. 32-3); Def.'s Ex. D at 25 (Doc. 32-4) (emphasis in original). The policies define "Your Car" as the vehicle shown under "YOUR CAR" on the declarations page of the policy. Def.'s Ex. C at 14; Def.'s Ex. D at 13. A "newly acquired car" ceases to be "newly acquired" at the "end of the 30th calendar day immediately following the date the car is delivered to *you*." Def.'s Ex. B at 8; Def.'s Ex. C at 14; Def.'s Ex. D at 12 (emphasis in original).

The Missouri Court of Appeals discussed provisions similar—though not identical—to the

5

Owned-Car Exclusion at issue here in *Buettner v. State Farm Mutual Automobile Insurance Company*. The insured in *Buettner* was a passenger in her truck when it was involved in an accident with another driver. *Buettner*, 210 S.W.3d at 365. At the time of the accident, the insured had three automobile insurance policies with State Farm, all of which included underinsured motorist coverage. *Id.* The insured demanded payment from State Farm of the limits for underinsured motorist coverage under all three policies, including the policy covering the truck. *Id.* State Farm refused to pay underinsured motorist benefits under the insured's other two policies, and the insured sued. *Id.* The policies contained the following language:

"THERE IS NO COVERAGE . . . FOR ***BODILY INJURY*** TO AN ***INSURED***:

1. WHILE ***OCCUPYING*** A MOTOR VEHICLE OWNED OR LEASED BY ***YOU, YOUR SPOUSE,*** OR ANY ***RELATIVE*** IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY[.]"

*Id.* at 366. The court found this language was unambiguous and did not provide coverage because the truck was not listed on the declaration page of the insured's other automobile insurance policies. *Id.* At 367-68. Thus, the insured could not recover under the other policies. *Id.*

The Court finds the exclusion language at issue here to be similarly unambiguous. The language in the Ford and Chevrolet policies clearly expresses an intention to limit UIM coverage to injuries occurring while the insured is occupying a car listed on the declarations page or a newly-acquired car. Here, the Grand Am does not fall under the definition of "your car" under the Ford Policy or the Chevrolet Policy because the Grand Am is not listed on the declaration page of either policy. The Grand Am also does not qualify as a "newly-acquired car" because it has been owned by Plaintiff for more than thirty days. Thus, under the clear, unambiguous terms of

6

both the Ford Policy and the Chevrolet Policy exclusions, UIM coverage was not available.[9]

## II. The Insured-Spouse Exception is not ambiguous and UIM coverage is unavailable under the terms of the Ford and Chevrolet Policies.

The Ford and Chevrolet policies go on to provide an Insured-Spouse Exception to the Owned-Car Exclusion. It states:

> This exclusion does not apply to the first **person** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while **occupying** or through being struck by a motor vehicle not **owned by** one or both of them; . . . .

Def.'s Ex. C at 24-26 (Doc. 32-3); Def.'s Ex. D at 23-25 (Doc. 32-4) (emphasis in original). The parties do not dispute that Plaintiff is the "named insured's spouse who resides primarily with that named insured." Plaintiff argues that she was "struck by a motor vehicle not owned by" her or her husband—the vehicle driven by Jessica Cannon. State Farm responds that, when read in conjunction with the exclusion language, the phrase "through being struck by a motor vehicle not owned by one or both of them" is unambiguous and does not apply to accidents in which the insured is occupying a car owned by her but not covered by the policy.

The Court agrees with State Farm. Reading this provision as Plaintiff suggests would nullify the Owned-Car Exclusion for Plaintiff and her husband, thus rendering that provision meaningless as to them. *See Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (holding that "each term of a contract is construed to avoid rendering other terms meaningless" and "a construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense."); *see also Wentzville Park Assocs., L.P. v. American Cas. Ins. Co. of Reading, Pa.*, 263 S.W.3d 736, 744

---

9 Plaintiff's objection that UIM coverage "follows the insured" is also without merit. Where a policy contains an owned-car exclusion, that exclusion "restricts coverage from 'following' [the insured] when she drives a vehicle she owns but did not choose to cover with the UIM endorsement." *Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 547 (8th Cir. 2015) (applying Missouri law).

7

(Mo. 2008) ("[T]he rules of construction . . . require a court to avoid construing a contract in a way which renders other terms and provisions meaningless."). The insurance contract limits UIM coverage to the vehicles owned by the insured that have UIM policies, and creates floating[10] coverage only where Plaintiff was occupying another's vehicle or is struck by an underinsured vehicle while not occupying a vehicle owned by the insured.[11] Otherwise, Plaintiff would have no incentive to purchase underinsurance coverage on any new vehicles she purchased—she need only own a single underinsurance policy to be covered. *See State Farm Mut. Auto. Ins. Co. v. W. Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo. 1972) (explaining the purpose of such provisions in the context of uninsured motorist coverage in automobile liability policies "is to cover occasional or incidental use of other [cars] without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium."). Thus, this provision is not reasonably open to Plaintiff's suggested interpretation, and the Court finds it is unambiguous in barring UIM coverage for the Accident.

## Conclusion

The terms of Plaintiff's policies are unambiguous and underinsured motorist coverage was not available under the Grand Am Policy. Accordingly, Defendant's Motion for Summary Judgment (Doc. 31) is GRANTED.

**IT IS SO ORDERED.**

DATED:   February 27, 2017              /s/ Greg Kays
                                                                   GREG KAYS, CHIEF JUDGE
                                                                   UNITED STATES DISTRICT COURT

---

10 "Floating" coverage follows an individual rather than a particular vehicle. *See Niswonger*, 992 S.W.2d at 313.

11 For example, Plaintiff would be covered if she were struck by an underinsured vehicle while crossing a street as a pedestrian.